1  Terry J. Thomas
   Bar (#5523)
2  7330 Hunter Glen Drive.
   Reno, NV 89523
3  (775) 750-6307
   email T2esq@yahoo.com
4  Attorney for Plaintiffs

5

6                    **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF NEVADA**

8  _____

   George P. Chapman, Jr., et al
9
           Plaintiffs
10                                            3:09-cv-00228-RJC-VPC
   vs.
11
    Deutsche Bank National Trust          **NOTICE OF MOTION AND
12 Company, et al.,                       MOTION TO DEMAND A HEARING
                                          UPON DEFENDANTS' REQUEST
13          Defendants.                    FOR JUDICIAL NOTICE;
                                          OPPOSITION TO MOTION TO
14 _____               DISMISS**

15        COMES NOW, Plaintiffs, George P. Chapman, Jr. And Brenda Chapman, by and

16 through their undersigned counsel, Terry J. Thomas, Esq., and hereby moves this Court for a

17 hearing upon Defendants' Request for Judicial Notice in addition to the other items

18 scheduled for the January 8, 2009 hearing.  This motion is based upon Federal Rule of

19 Evidence 201,  this Opposition to Defendants' Motion to Dismiss, the accompanying

20 Memorandum of Points and Authorities in Support of Motion, attached exhibits and all

21 pleadings on file herein.

22

23 DATED: November 9, 2001

24 By:_____/S/_____
   Terry J. Thomas Attorney for Plaintiffs
25

26

27

28
                                              OPPOSITION TO MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Due to the resignation of Judge Sandoval, Plaintiffs' Motion to Remand this case back to state court has not been adjudicated.  Although Defendants have unlimited funds to pay their counsel, Plaintiff George Chapman, a Marine veteran and cancer victim lives on Social Security.  Paying Chapman's counsel to file an Opposition to Defendants' Motion to Dismiss *before* his Remand motion was adjudicated seems a premature expense.  This Court may decide it has no jurisdiction, thus no reason to consider Defendants' motion.  This Opposition has now become timely since Defendants' Motion is scheduled for oral argument at the same time Plaintiffs' Motion to Remand will be heard.

Plaintiffs were attempting to modify a mortgage taken out to pay for Plaintiff George Chapman's cancer treatments.  They fell behind on payments but were constantly told that everything would be worked out; that new interest and payment rates would modify the mortgage in order to allow Plaintiffs' to keep their home.  Like almost everyone in Nevada, the value of Plaintiffs' home plummeted along with Brenda Chapmen's earnings.

Unbeknownst to Plaintiffs, Defendants were in the process of foreclosing upon their home while negotiating a loan modification.  Plaintiffs were never given the NRS mandated statutory notice of default; nor notice that foreclosure was scheduled; nor notice of the trustee's sale and no notice of the filing of a deed upon their property.  Out of State Defendants prefer to throw a family out in the street rather than modify a mortgage to the home's short sale value.  What makes this behavior so maddening is that Defendants can only receive the short sale value from a foreclosure sale–plus must pay the costs associated with a foreclosure.  So why throw families out in the street when there is no more money to be made-even if the communities they devastate are in someone else's community?

1    Apparently the "servicer" of Plaintiffs' mortgage does make lots and lots of money on

2    foreclosures---- with thousands of dollars in foreclosure fees.  Thus, has been formed the

3    "Foreclosure Industry."  Since most recent mortgages, such as Plaintiffs,' have been put into

4    a "pool" to maximize profits, the actual "owner" of the mortgage, if one actually exists,

5    becomes a mystery to the home owner as well as this Court and makes the "owner" unable to

6    prove it has legal standing to foreclose!

7    On or about October 15, 2008, a trustee's deed of sale was recorded stating that

8    Plaintiffs' home was sold to Defendant:

9    "Deutsche Bank National Trust Company, as Trustee under Pooling and
     Servicing Agreement Dated as of January 1, 2006 Morgan Stanley ABS
10   Capital I Inc.., Trust 2006-NCI Mortgage Pass-Through Certificates, Series
     2006-NC."

11

12   Counsel for Defendants corrects Plaintiffs' complaint, stating they erroneously sued

13   just plain old Deutsch Bank National Trust Company, when the real "owner" is as stated

14   above.  (See caption on page 1 of Defendants' Motion to Remove and to Dismiss).  This

15   German National Bank may or may not actually have access to, or hold, some nebulous

16   security instrument that somehow includes a reference to part of Plaintiffs' interests in their

17   home.  But they have to PROVE it!  And, Deutsch Bank's counsel has not bothered to even

18   attempt to prove that the trustee for: "Pooling and Servicing Agreement Dated as of January

19   1, 2006 Morgan Stanley ABS Capital I Inc.., Trust 2006-NCI Mortgage Pass-Through

20   Certificates, Series 2006-NC," has legally sufficient standing to force Plaintiffs from their

21   home.

22   In Summary:  Plaintiff's complaint adequately pleads that the foreclosure was legally

23   inadequate, that proper NRS foreclosure procedure was followed.  Plaintiffs allege that

24   Defendants have no ownership interests to assert; that their foreclosure was wrongful and

25   must be set aside, and; that wrongful foreclosure supports punitive damages according to a

26   new Nevada Supreme Court case.  All issues of fact entitling Plaintiffs to a trial on the

27   merits.

28                                                                  OPPOSITION TO MOTION TO DISMISS

1  <u>Defendants' Motion to Dismiss</u>:   Defendants focus upon Plaintiff's inability to prove

2  the underlying case.  Defendants base their entire Motion upon their corresponding Request

3  for Judicial Notice containing about 50 pages of hearsay photocopies of photocopies that

4  appear to be some loan and title documents, with great gaps in purported assignments from

5  several unidentified foreign entities to other unidentified foreign entities.  Defendants

6  attached the label of "Judicial Notice," thus self-excusing themselves from the burden of

7  authentication.  It is screamingly obvious that these photocopies are NOT judicially

8  noticeable under Fed. R.Evid. 201.

9                                              **II.**

10  **PLAINTIFF DEMANDS THE SCHEDULED ORAL ARGUMENT INCLUDE A**

11  **HEARING ON THE REQUEST FOR JUDICIAL NOTICE**

12        To challenge the propriety of taking judicial notice a party must file a motion

13  requesting an opportunity to be heard.  *Chen v. Metropolitian Ins. & Annuity Co.* (5th Cir.

14  1990) 907 F2d 566, 569.  The court must provide an opportunity to be heard. *Cooperative de*

15  *Ahorro y Credito Aguada v. Kidder, Peabody & Co.*  (1st Cir. 1993) 993 F2d 269, 273).

16  Plaintiff's request is timely because there was simply no point in responding to any of

17  Defendants' Motions or Request for Judicial Notice since the all important issue of this

18  Court's jurisdiction is still in question.  If this Court has no jurisdiction, then Defendants'

19  motions and Plaintiffs' responses are mere expensive exercises.

20  .                                           **III.**

21  **NONE OF THE  PHOTOCOPIES OF  PHOTOCOPIES MEET THE**

22  **REQUIREMENTS FOR JUDICIAL NOTICE**

23  The recent case of Walker v. Woodford (SD CA 2006) 454 F.Supp.2d 1007, 1022,

24  contains an excellent discussion of the law of Judicial Notice:

25        The Rule was intended to obviate the need for formal fact-finding as to
         certain facts that are undisputed and easily verified. Fed. R.Evid. 201;
26        *Melong v. Micronesian Claims Comm*., 643 F.2d 10, 12 n. 5
         (D.C.Cir.1980) (judicial notice under Rule 201 is designed for judicial
27

28                                                               OPPOSITION TO MOTION TO DISMISS

recognition of scientific or historical fact without resort to cumbersome methods of proof). The Rule permits a court to take judicial notice of two kinds of facts: (1) those that are generally known within the court's territorial jurisdiction; and (2) those that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, for example, almanac, dictionary, calendar or similar source. In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994). Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. See *Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir.2033); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001); *Jones*, 29 F.3d at 1553. Nor may the court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689-90; *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir.2001)....

Plaintiffs dispute virtually everything about Defendants' photocopies. For example, Defendants' Request does not bother to even attempt to authenticate the photocopies of photocopies. Apparently counsels' secretary merely provided this Court with a list of what the secretary considers to be contained within the Request. Defendants must introduce evidence sufficient to sustain a finding that the item is what the proponent claims it to be (Fed. R.Evid. 901) or the establishment of facts sufficient to constitute self-authentication under Fed. R.Evid. 902. (See *United States v. Thomas* (2nd Cir. 1995) 54 F3d 73, 82 – authentication through testimony of knowledgeable witness. Burden of proof is upon the proponent: Fed. R.Evid. 901(a) *United States v. Gagliardi* (2nd Cir. 2007) 506 F3d 140, 151. Clearly Defendants' counsels' secretary does not have personal knowledge under 901(b)(1) of what he or she has listed as a description.

The Court may refuse to take judicial notice if the requesting party has failed to authenticate the documents. *Madeja v. Olympic Packers, LLC* (9th Cir 2002) 310 F3d 628, 639. It is NOT proper for a court to take judicial notice of disputed facts contained in hearsay document. See *United States v. Burch*, 169 F.3d 666, 672 (10th Cir.1999).

OPPOSITION TO MOTION TO DISMISS

1  Unauthenticated photocopies are the purest form of hearsay.  The law is clear, judicial notice

2  should be used "sparingly" in the early stages of litigation.  "Only in the clearest of case

3  should a district court reach outside the pleadings for facts necessary to resolve a case at that

4  point." *Victaulic Co. V. Tieman* (3rd Cir. 2007) 499 F3d 227, 236.

5  **IV.**

6  **THE NEVADA LEGISLATURE RECOGNIZED THE NEED**

7  **TO PROVIDE ORIGINALS OR CERTIFIED COPIES**

8      Out-of-State lenders' "trustees" and their vassals have a well deserved reputation for

9  avoiding the laws of document authentication when removing Nevadans from their homes.

10  Recognizing this the Nevada Legislature recently passed AB 149, that mandates mediation

11  before a trustee may foreclose.  The addition to NRS 107.080, subsection 4, states in relevant

12  part: "...The beneficiary of the deed of trust shall bring to the mediation the <u>original or a</u>

13  <u>certified copy</u> of the deed of trust, the mortgage note and each assignment of the deed of trust

14  or mortgage note...."  (Emphasis added.)

15      This Court should apply current Nevada law to this case. Clearly Nevada Law

16  mandates the Defendants to produce an:  "...original or a certified copy..." of

17      1. The deed of trust.
       2. The mortgage note
18      3. Each assignment.

19      NOT photocopies of photocopies.

20      The Nevada Supreme Court's Rules for the certification of mortgage documents

21  requires:

22      1.  The name, address, capacity, and authority of the person making the certification;

23      2.  The person making the certification is in actual possession of the original mortgage
        note, deed of trust, and each assignment of the mortgage note and deed of trust; and

24

25      3.  The attached copy of the mortgage note, deed of trust, and each assignment of the
        deed of trust, and assignment of the deed of trust in the possession of the person
26      making the certification.   (Nevada Supreme Court's Amended Foreclosure Mediation
        Rules)

27      The need for the above requirements is amply illustrated by Defendants' Ex. 4, which

28      OPPOSITION TO MOTION TO DISMISS

purports to be a "Substitution of Trustee" recorded on 07/09/08. However, NO such document appears on the Washoe County Recorder's chain of title documents! (See true and correct copy of page 3 of its chain of title list for Plaintiffs' property showing the last 14 entries covering the 07/09/08 date, EX 1.)

Defendants' Exhibit 5 consists of obviously fabricated Certified Mail receipts with the "label" containing Plaintiffs' name and address crudely pasted to a photocopy. These fabricated receipts do not have the proper post office stamps and the post office track and confirm do NOT even show that the "item' was delivered to the Plaintiffs' address. See especially Ex. 5, P.5 of 7 showing: "Your item was delivered ... in PHOENIX AZ..."

**V.**

**PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS ITS CLAIMS FOR RELIEF**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiffs claims. A claim can be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the complaint." *Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The issue is not whether the plaintiff will ultimately prevail, but solely whether he has stated a claim upon which relief could be granted. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.2003).

Plaintiff's first claim for relief asks for injunctive and declaratory relief alleging that she was never given the statutory notice of:

1. The trustee's sale.

2. The name and location of the entity that had obtained either legal or physical possession of the promissory note and deed of trust on her property.

3. Plaintiff was never given notice of which entity became the trustee on the promissory note and deed of trust.

These Notices were and are required by NRS 107.080. They must be mailed and published. Plaintiffs' prayer asks for a declaratory judgment that the trustee's purported sale of their home on or about October 15, 2008, was improperly noticed, improperly carried out and is null and void ad initio. And, that Plaintiffs are entitled to a preliminary and

OPPOSITION TO MOTION TO DISMISS

permanent injunction to prohibit Defendants from foreclosing upon their home.

The recent Nevada Supreme Court case of *Countrywide Home Loans v. Thitchener,* 192 P.3d 245 (2008) supports an award of punitive damages for wrongful foreclosure if the elements are proven at trial.  Plaintiffs have properly plead wrongful foreclosure, thus are entitled to prove this element of damages.

## VI.

## PLAINTIFFS ADEQUATELY PLED THEIR QUIET TITLE
## ACTION UNDER  NRS 40.010

NRS § 40.010 states: **"Actions may be brought against adverse claimants**.  An action may be brought by any person against another who claims an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim."

Plaintiffs alleged:

1. "....that no defendant owns or possesses their promissory note or their deed of trust; that no defendant can properly be a plaintiff or has legal standing to foreclose upon their property; that all rights, title and interest in their property were sublimated into a non-functional "security" instrument that gives no one entity rights in individual notes and deeds of trust.  Thus no entity has legal standing to oppose this complaint."

2. "...that since no entity has obtained all the rights necessary to obtain an interest in plaintiffs' property, no entity has such interest."

3. "...that Defendants' insistence upon their rights to receive payments from Plaintiffs with no proof of the ownership of any rights, titles, interests, or liens upon Plaintiffs' property have placed a cloud upon plaintiffs' title."

Plaintiffs also pled that they were living in the home and; that all Defendants are asserting adverse claims against their home.   Thus all necessary elements are properly pled for a quiet title action.

**CONCLUSION**

At stake here is perhaps much more than the question of whether a Defendants' counsel can submit a bunch of hearsay photocopies  (some with the warning word "COPY" across them, making them photocopies of photocopies)  and claim they prove Plaintiff cannot state claims for relief.  The big question is: "May mortgage lenders/trustees avoid the last 100 years or so of the law concerning the  admission of documentary evidence by the simple act of requesting Judicial Notice for hearsay photocopies?"  Defendants ask this Court to just skip the usual authentication requirements for documentary evidence and take their secretary's listings as sufficient to dismiss Plaintiff's case.

As far as Plaintiff can determine, the U.S. Congress has not yet exempted Defendants and its brother members of the "too-big-to-fail-club," recipients of the $750 BILLION in TARP funds, from the Federal Rules of Evidence.  This Court is respectfully requested to avoid fashioning enough exemptions from existing Black Letter Law to dismiss Plaintiffs' complaint

This Court is respectfully requested to strike Defendants' request for judicial notice based upon the screamingly obvious– these papers are pure hearsay and are not even close to fitting under the mantel of judicial notice.  Thus, no admissible evidence has been submitted by Defendants, and deny Defendants' Motion to Dismiss.

DATED: November 9, 2009


By:_____/S/_____

Terry J. Thomas Attorney for Plaintiff

OPPOSITION TO MOTION TO DISMISS